UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN MICHAEL ELDRIDGE,<br><br>                                     Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                                     Defendant. | Case No.:  17cv497-JLS (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 15, 17]** |

Plaintiff Steven Michael Eldridge brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his claim for disability insurance benefits. ECF No. 5. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 15-1 ("Pl.'s Mot.")] and Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [ECF Nos. 17-1 and 18-1[1] ("Def.'s Mot.")].

This Report and Recommendation is submitted to United States District Judge Janis L. Sammartino pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States

---

[1] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment appear on the docket as two documents, numbers 17 and 18. However, the content of the documents is the same. For clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely, "Def.'s Mot.," and will cite to ECF No. 17-1.

District Court for the Southern District of California.  For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Cross-Motion for Summary Judgment be **DENIED.**

## I.    PROCEDURAL BACKGROUND

On October 30, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, alleging disability beginning on August 31, 2013.  See Administrative Record ("AR") at 209-221. The claims were denied initially on January 22, 2014, and upon reconsideration on March 13, 2014, resulting in Plaintiff's request for an administrative hearing.  Id. at 119-22, 127-33, 134-35.

On July 23, 2015, a hearing was held before Administrative Law Judge ("ALJ") James S. Carletti.  Id. at 42-70.  Plaintiff appeared and was represented by attorney Omar Ortega, who also appeared in person.[2]  Id. at 42, 44.  Plaintiff, vocational expert Mary Jesko, and medical expert Gerald Weingarten testified at the hearing.  Id. at 42-70.  In a written decision dated October 23, 2015, ALJ Carletti determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 31, 2013 through the date of the ALJ's decision. Id. at 24, 35.  Plaintiff requested review by the Appeals Council.  Id. at 19-20.  In an order dated January 6, 2017, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 1-6.

On March 10, 2017, Plaintiff filed the instant action seeking judicial review by the federal district court.  See ECF No. 1.  On May 5, 2017, Plaintiff filed an amended complaint. ECF No. 5. On February 6, 2018, Plaintiff filed a motion for summary judgment alleging the ALJ committed legal error by improperly considering Plaintiff's testimony.[3]  See Pl.'s Mot.  Plaintiff

---

[2] Although the ALJ stated in his Hearing Decision that Plaintiff "is represented by Mario A. Davila and Max Ortega, non-attorney representatives," the Court notes representation and fee agreement documents that identify Omar Ortega as an attorney and co-representative at the time of the hearing.  AR 207-08.  Mario A. Davila was Plaintiff's primary representative.  AR 208.
[3] Plaintiff was required to file a motion for summary judgment by January 17, 2018. ECF No. 13.  The Court allowed the late filing and continued related dates.  ECF No. 16.

asks the Court to reverse the decision of the Commissioner and remand for the payment of benefits, or alternatively, to remand for the correction of the legal errors.  Id. at 10.  On March 6, 2018, Defendant timely filed an opposition to Plaintiff's motion for summary judgment and a cross-motion for summary judgment asserting that the ALJ's decision was supported with substantial evidence and is free of reversible error.  See Def.'s Mot.

## II.   **DISABILITY HEARING**

On July 23, 2015, Plaintiff, represented by counsel, appeared at the hearing before the ALJ.  See AR at 42-70.  The ALJ noted that Plaintiff was alleging disability as of August 31, 2013 "because of joint pain, neck pain, muscle spasms, depression, asthma, chronic bronchitis and sinus pain."  Id. at 44.  Plaintiff was thirty-nine years old at the time of the hearing.  Id. at 45.  During the hearing, the ALJ questioned Plaintiff regarding his work experience and alleged disability.  Id. at 45-61.  Plaintiff testified that he has an eleventh-grade education, and that prior to his alleged onset of disability, he had worked as a prep cook from 1994 until September 30, 2013, and as a plumber's helper for about one year in 2008.  See id. at 45-46.  Plaintiff stated that he stopped working as a cook because he had severe pain in his hands, "swelling of joint pain," and pain in his knees and lower back from standing all day.  Id. at 46.

The ALJ asked Plaintiff about the following medical providers: his primary care doctor; Dr. Navarro; Dr. Soumekh, the neurosurgeon; and Dr. Jose Lira.  Id. at 46-48.  Plaintiff testified that his primary care doctor was Dr. Taikeun Park who had treated him for about three to four years.  Id. at 46, 57.  He also stated that Dr. Park was no longer his treating doctor because he had been switched to a different doctor, but that Dr. Park had a good understanding of his physical condition.  Id. at 57.  Plaintiff stated that he had been seeing Dr. [Rosa] Navarro, his pain management doctor, about once or twice per month for about six to eight months prior to the hearing.  Id. at 46-47; see also id. at 685.  Plaintiff attested that his condition had gotten worse since he began seeing Dr. Navarro because he had "an epidural steroid injection that went wrong" and he had to go to the emergency room.  Id. at 47.  Plaintiff stated that he had an upcoming appointment with neurosurgeon Dr. [Massoud Hertzel] Soumekh because the pain management for his neck was not working, and Plaintiff would like to "see what he says about

surgery." Id. at 47-48; see also id. at 705. Plaintiff attested that Dr. Jose Lira is his pulmonary doctor who treats him for "asthma, COPD, and [his] sleep apnea." Id. at 48; see also id. at 710-11. Plaintiff testified that he has not been able to use his sleep apnea machine because wearing the mask causes pain in his jaw, neck, and back. Id. at 48.

Plaintiff attested that he lives with his parents, drives a little bit, but does not do any work around the house. Id. at 48. When he drives, he drives "around the corner to the pharmacy" to get his prescriptions. Id. at 56. He takes medications as prescribed and they provide "a little bit of relief," but they also have unwanted side effects such as sweating and leg pain. Id. at 48-49.

Plaintiff testified that he has had a neck problem for about two years that is primarily due to herniated discs, and that he constantly has a "dull aching kind of sharp pain" in the neck that varies in intensity. Id. at 50. Plaintiff stated that sitting makes the pain worse and standing makes it "start to hurt in the neck between the shoulders." Id. at 50-51. "Laying down, using ice packs, and warm packs" relieves the pain. Id. at 51. Plaintiff testified that he has had back pain for the past year as a "dull aching in the hip area, in the lower back." Id. He also gets "a really sharp kind of pain in the middle upper back" caused by leaning or twisting. Id. On a scale of one to ten, with ten comparable to "being on fire," Plaintiff described his back pain as a "nine" about eighty percent of the time. Id.

Plaintiff attested that he has psoriatic rheumatoid arthritis in his hands and a torn "triangular fibrocartilage" that hurts "really bad."[4] Id. at 52. He described the pain as a "real bad bruising type of pain" such that he cannot put his hands in his pockets or brush them against anything or wear a brace. Id. Plaintiff also stated that he gets "really bad numb and tingling muscle spasms that cause [his] hands to clinch uncontrollably." Id. He stated that he always has the pain "mildly," but that at times it gets severe and locks up like a muscle cramp. Id. at 53. Plaintiff stated that the psoriatic arthritis also affects his hip, knees, and feet. Id. In

---

[4] There is support in the record for a diagnosis of psoriatic arthritis, but not psoriatic rheumatoid arthritis. See e.g., AR at 635, 637.

response to the ALJ, Plaintiff stated that he does not have psoriasis, but that the rheumatologist told him that he has psoriatic arthritis.  Id.

Plaintiff stated that his high blood pressure gives him chest pains and dizziness, and that carpel tunnel in both of his hands causes numbness.  Id. at 54.  Plaintiff further stated that he checks his blood pressure regularly and that it is usually around 180 over 100, or 160 to 180 over 100 to 110.  Id.  He attested that on a typical day, he lays down for about ten hours of the day and watches television.  Id.  He stated that he makes his own breakfast by microwaving or toasting "easy stuff."  Id.  Plaintiff stated that his mother has a maid that comes to clean his room, and he does not do grocery shopping or household chores.  Id. at 55-56.  Plaintiff testified that he has "really bad neck pain and back pain" that prevents him from doing any kind of long distance traveling or going to the theater to watch a movie.  Id. at 57.  He also attested that he "used to go fishing in a boat and everything all the time," but that he can no longer do that "because of [his] hands" and because he "get[s] dizzy a lot and it's really dangerous."  Id.

Plaintiff testified that there was an error in his medical records regarding a cervical fusion; he stated that he did not have a cervical fusion.[5]  Id. at 58.  Plaintiff further attested that his medical records indicate that he had a fractured neck in 2011 but he does not remember that.[6]  Id. at 59.

Dr. Weingarten, the medical expert, testified by telephone.  Id. at 44.  He asked Plaintiff which medications he was presently taking.  Id. at 59.  Plaintiff responded that he was taking chlorthalidone and amlodipine for his high blood pressure, Tylenol 3 with codeine (twice a day), albuterol inhaler, pomercort inhaler, naproxen 500 mgs, Claritin, and flucasone.  Id. at 60.  Dr. Weingarten stated that he had reviewed Plaintiff's evidence of record exhibits 1F through 28F.[7]

---

[5] Exhibit 30F contains the erroneous information about a cervical fusion.  AR 718.
[6] Exhibit 30F contains the erroneous information about a fractured neck.  AR 718.
[7] The AR contains a section of Plaintiff's medical treatment documents designated as exhibit numbers 1F through 31F.  AR 335-725.  Exhibit 29F contains progress notes dated February 2, 2015 through June 16, 2015 from Dr. Jose Lira.  Id. at 710-16.  Exhibit 30F contains emergency department records from Scripps Mercy Hospital dated July 7, 2015.  Id. at 717-22.  Exhibit 31F is evidence supplied by Plaintiff's attorney/representative dated January 6, 2016 from physical therapist Eugielyn Montero.  Id. at 723-25.

Id. at 59.  He stated that based on his review, Plaintiff has a history of hypertension, asthma, neck pain, low back pain, "questionable psoriatic arthritis," a work-related injury to his left hand that was diagnosed as a sprain, a tear in the cartilage of his left wrist, and a diagnosis of De Quervain's tenosynovitis of his left wrist by an orthopedic doctor in exhibit 12F.  Id. at 61; see also id. at 586 (exhibit 12F).  Dr. Weingarten attested that the psoriatic arthritis is questionable because there is no documentation of it and Plaintiff stated that he never had a rash.  Id.  However, when Plaintiff's attorney asked whether Plaintiff's complaints of swelling of the joints and problems with his hands could typically be found in individuals who suffer from psoriatic arthritis, Dr. Weingarten answered "yes."  Id. at 63.  Dr. Weingarten also stated that there is no documentation that Plaintiff's blood pressure runs 180 over 100 all the time. Id. at 62.  He stated that Plaintiff had a neurosurgical consultation regarding his neck in exhibit 22F, some small herniated discs, and a cervical epidural, but that it "doesn't sound like the neurosurgeon was that interested in doing surgery."  Id. at 62.  He stated that regarding Plaintiff's lower back, the MRI showed "a couple of minor little disc bulges."  Id.  He stated that he does not understand why Plaintiff would report pain at the level of nine out of ten, eighty percent of the time because "[t]hat's a lot of pain" and "[t]hat doesn't make sense . . . that he would have that either."  Id.  He further stated that Plaintiff has had a diagnosis of "fibromyalgia, neuralgia as far as his neck goes" and that he "guess[es] [Plaintiff is] telling us his pain level is like not compatible with some of the findings in the medical records."  Id.

Dr. Weingarten testified that Plaintiff would have the following functional limitations:

> [C]an occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds. Stand/walk six hours in an eight-hour workday.  Sit six hours in an eight-hour workday.  Push/pull otherwise unlimited.  As far as postural limitations climbing ladders, ropes scaffolding occasionally. No other postural limitations. Manipulative limitations, he would have some like gross difficulty with his left wrist because of chronic pain in his left wrist.  So he might be restricted to lifting less with his left hand only.  As far as environmental limitation, because he's taking the narcotics, he should avoid exposure to hazardous machinery and heights.

Id. at 63.

Vocational expert Mary Jesko testified.  Id. at 65-69.  The ALJ presented the hypothetical of a younger individual with less than a high school education and prior work activity Ms. Jesko

had indicated as "medium and heavy and unskilled, semi-skilled with non-transferability of skills to sedentary or light positions," with limitations of occasional exposure to scaffolding, no exposure to hazardous machinery or heights, a reduction of "10/10" in lifting/carrying with the left upper extremity because of the left wrist, and the dominant hand is the right hand. Id. at 66-67. Ms. Jesko stated that examples of jobs that fit that hypothetical would be rental clerk, ticket seller, and order clerk. Id. at 67-68. She attested that if such a person missed work more than twice a month without a medical excuse, that person would not be able to keep the job; and if this person missed work three or more times a month even with a valid medical excuse, that person would not be able to keep the job. Id. at 68.

In the second hypothetical, the ALJ referenced the limitations contained in exhibit 10F, an impairment questionnaire completed by Dr. Taikeun Park on April 23, 2014. Id. at 68; see also id. at 572-76 (exhibit 10F). Ms. Jesko opined that if Plaintiff could only be in a seated position for less than an hour and stand/walk for about twenty to thirty minutes in an eight-hour work day, then Plaintiff could not sustain full-time work. Id. at 68. When asked to confirm that there would be no positions available "if the person could never or rarely grip, grasp, grip, turn or twist objects with either hand or use fingers or hands for fine manipulation or use arms for reaching overhead bilaterally," Ms. Jesko stated that was correct. Id.

At the end of the hearing, Plaintiff's attorney added the following comments to the ALJ: "I believe that the testimony from the claimant today regarding his limitations as well as the pain that he experiences is consistent with the treating doctor report in 10F, and we ask that you give controlling weight to 10F and the resulting opinion from the vocational expert when considering Exhibit 10F." Id. at 69.

### III. **ALJ'S DECISION**

On October 23, 2015, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act. AR at 24-41. The ALJ applied the five-step sequential evaluation process established by the Social Security Administration for determining whether an individual is disabled and initially found that Plaintiff had not engaged in substantial gainful activity since August 31, 2013, the alleged onset date. Id. at 25-26. He

then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Code of Federal Regulations: "asthma, cervicalgia, and left wrist synovitis (20 CFR 404.1520(c) and 416.920(c))." Id. The ALJ determined that Plaintiff's "medically determinable impairments of hypertension, hyperlipidemia, obstructive sleep apnea, hepatic and psoriasis with arthropathy, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic work activities are therefore nonsevere." Id. at 26. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the Regulation's listed impairments. Id. at 28-29.

To determine at step four whether Plaintiff could return to his past work, the ALJ performed a residual functional capacity ("RFC") analysis. See id. at 29-33. The ALJ stated that "[a]fter careful consideration of the entire record," he found that Plaintiff has the RFC to perform light work, "except the claimant can have occasional exposure to scaffolding; reduction to lifting and carrying 10 pounds occasionally and 10 pounds frequently using the upper extremity because of the left wrist; and no exposure to hazardous machinery or unprotected heights." Id. at 29. In reaching this decision, the ALJ found the RFC assessment to be supported by the evidence as a whole and that Plaintiff's "subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms." Id. at 33. Having completed the RFC findings, the ALJ determined that Plaintiff could not perform his past relevant work as a prep cook or a construction assistant. Id. However, the ALJ determined that Plaintiff could make a "successful adjustment to other work that exists in significant numbers in the national economy," such as rental clerk, ticket seller, or order clerk. Id. at 34-35. The ALJ therefore found that Plaintiff was not disabled. Id.

## IV. **STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017)

(citing <u>Benton ex rel. Benton v. Barnhart</u>, 331 F.3d 1030, 1035 (9th Cir. 2003)).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." <u>Lewis v. Apfel</u>, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." <u>Id.</u> (citation omitted); <u>see also</u> <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1011 (9th Cir. 2003). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. <u>Trevizo,</u> 871 F.3d at 674–75 (citing <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007)). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. <u>See</u> <u>Lewis</u>, 236 F.3d at 509. "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." <u>Garrison v. Colvin</u>, 759 F.3d 995, 1010 (9th Cir. 2014).

Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. <u>Id.</u>

## V. <u>DISCUSSION</u>

Plaintiff argues that the ALJ committed legal error because he did not properly consider Plaintiff's testimony. Pl.'s Mot. at 2. Plaintiff claims that the ALJ failed to identify clear and convincing reasons for discounting Plaintiff's testimony regarding his subjective pain and the severity of his symptoms and instead "articulated generalities." <u>Id.</u> at 2, 4, 9. Plaintiff contends that the ALJ "simply sets forth the oft rejected boilerplate language numerous courts have rejected as boilerplate." <u>Id.</u> at 5. Plaintiff also claims that the ALJ improperly rejected Plaintiff's testimony "based on a belief that the testimony is not credible because it lacks support in the objective medical evidence." <u>Id.</u> Plaintiff argues that "a rejection of a claimant's testimony based on a lack of objective evidence is always legally insufficient." <u>Id.</u> Finally, Plaintiff argues

that the ALJ's comments regarding Plaintiff's activities of daily living "offer[] no explanation as to how those sporadic activities render [Plaintiff] not credible." Id. at 7.

Defendant responds that the ALJ properly evaluated Plaintiff's subjective symptom testimony. Def.'s Mot. at 4. Defendant claims that the ALJ made "specific credibility findings, properly supported by the record and sufficiently specific to ensure a reviewing court that she did not 'arbitrarily discredit' a claimant's subjective testimony." Id. In support, Defendant asserts that the ALJ noted (1) that "Plaintiff engaged in daily activities that were inconsistent with his alleged inability to perform any work" [id. at 4-5]; (2) that "despite Plaintiff's complaints of a disabling level of impairment he only received conservative treatment" [id. at 5-6]; (3) that some of Plaintiff's testimony is contradicted by the medical record [id. at 6-7]; and (4) that there was "a lack of objective evidence to support the level of impairment [Plaintiff] alleged" [id. at 7-8].

**A. <u>Relevant Law</u>**

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms. See <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citation omitted). The claimant, however, need not prove that the impairment reasonably could be expected to produce the alleged degree of pain or other symptoms; the claimant need only prove that the impairment reasonably could be expected to produce some degree of pain or other symptom. Id. If the claimant satisfies the first element and there is no evidence of malingering, then the ALJ "can [only] reject the claimant's testimony about the severity of her symptoms . . . by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." <u>Reddick</u>, 157 F.3d at 722 (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995)). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's]

testimony." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing the claimant's testimony, "an ALJ may consider . . . reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." <u>Orn v. Astrue</u>, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks and citation omitted). An ALJ also may consider the claimant's work record and testimony from doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which the claimant complains. <u>Thomas</u>, 278 F.3d at 958–59 (internal quotation marks and citation omitted); <u>see also</u> 20 C.F.R. § 404.1529(c). If the ALJ's finding is supported by substantial evidence, the court may not second-guess his or her decision. <u>See</u> <u>Thomas</u>, 278 F.3d at 959; <u>Carmickle v. Comm'r, Soc. Sec. Admin.</u>, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony were improper).

Neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "asthma, cervicalgia, and left wrist synovitis." AR at 26; <u>see also</u> Pl.'s Mot.; Def.'s Mot. The ALJ also recognized the following medically determinable impairments, but found them to be nonsevere: "hypertension, hyperlipidemia, obstructive sleep apnea, hepatic and psoriasis with arthropathy."[8] AR at 26. Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied. <u>See</u> AR at 29-30; <u>see also</u> <u>Lingenfelter</u>, 504 F.3d at 1036; Pl.'s Mot.; Def's Mot. Furthermore, neither party alleges that the ALJ found that Plaintiff was malingering. <u>See</u> Pl.'s Mot.; Def.'s Mot. As a result, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms. <u>See</u> Lingenfelter, 504 F.3d at 1036.

---

[8] An ALJ is required to consider all medically determinable impairments of which he is aware, including those that are not "severe," in assessing an individual's residual functional capacity. 20 C.F.R. § 416.945.

17cv497-JLS (BLM)

The Court will consider Plaintiff's challenges to the ALJ's reasons.

**B.  Specific Testimony**

As an initial matter, the Court finds that the ALJ failed to identify the specific statements Plaintiff made that the ALJ decided were not credible, and thus does not provide the necessary information for meaningful judicial review.  See Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'" (citation omitted)); Reddick, 157 F.3d at 722.

In the ALJ's written decision, he acknowledged his duty to consider Plaintiff's symptoms and make a finding on the credibility of the statements based on a consideration of the entire case record.  AR at 29.  Then he paraphrased some of Plaintiff's testimony and statements of record as follows:

> In testimony, the claimant alleged he was unable to work due to joint and muscle pain in his knees, hands, and lower back caused by standing all day long at work.  He described having constant pain that is dull aching and sharp pain.  He acknowledged receiving treatment from a pain management center that included medication and injections and indicated lying down and ice and heat packs help with the pain (Testimony).  In addition to the claimant's testimony, the undersigned considered his statements of record.  In his Asthma Questionnaire, the claimant alleged having two to three asthma attacks per month.  He acknowledged using inhalers daily (Exhibit 6E).  In his Adult Function Report, he stated could lift five pounds and walk two blocks before requiring a five minute break (Exhibit 8E, p. 6).  His remaining statements of record are essentially consistent with his testimony.

Id.  Next, the ALJ stated that although "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible for several reasons."  Id. at 29-30.  Then the ALJ states that Plaintiff's "reported activities since the alleged onset date are inconsistent with his alleged disabling functional limitations."  Id. at 30.  The ALJ noted some of those activities, but only vaguely referred to the testimony at issue as "claimant's allegations of disabling limitations to the extent alleged."  Id.

17cv497-JLS (BLM)

The ALJ also stated "routine and conservative treatment" as a second reason for not supporting "more restrictive functional limitations than those assessed herein." Id. Again, the ALJ stated some examples of conservative treatment, but only vaguely referred to the testimony at issue as "the allegation of a disabling impairment." Id. The ALJ's third reason was that the "objective evidence regarding the claimant's neck and back disorder do not support greater limitations than those in the above residual functional capacity." Id. The next ten paragraphs are devoted to summarizing the medical evidence in the record and why that evidence supports the RFC. Id. at 30-33. Finally, the ALJ concludes by stating that "the above residual functional capacity assessment is supported by the evidence as a whole" and Plaintiff's "subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms." Id. at 33.

The ALJ's vague references to Plaintiff's statements as "allegations of disabling limitations" are not specific identifications of which statements are being discredited. Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (holding that "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony" (citing Reddick, 157 F.3d at 722)).[9] Plaintiff made numerous statements in his testimony about his pain and other symptoms, and the ALJ failed to specify which statements he did not believe and to connect each statement to the evidence that undermined it.[10] See AR at 46-61. Accordingly, the Court finds that the ALJ committed legal error by failing to identify the specific testimony found not credible. See Brown-Hunter, 806 F.3d at 494 ("Because the

_____

[9] Although the court in Holohan rejected the ALJ's reason for his adverse credibility finding, it provides an example of the level of specificity required in identifying the testimony that the ALJ found unbelievable. In Holohan, "[t]he ALJ found that *Holohan's testimony that her symptoms had gotten worse since she began treatment with Dr. Oh lacked credibility*." Holohan, 246 F.3d at 1208 (emphasis added).

[10] For instance, Plaintiff testified that his pain had not improved since he started seeing a pain management doctor [id. at 47]; he does not do household chores or grocery shopping [id. at 55-56]; his back pain is a level nine out of ten for eighty percent of the time [id. at 51]; he has psoriatic arthritis that causes pain in his hands, hip, knees and feet [id. at 52-53]; and he used to go fishing but can no longer do so because of the pain in his hands and frequent dizziness [id. at 57].

17cv497-JLS (BLM)

ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."); Lingenfelter, 504 F.3d at 1036 ("[T]he Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms."). Because the ALJ erred by failing to identify the testimony he found not credible, the ALJ's conclusions concerning Plaintiff's RFC are therefore not supported by substantial evidence and the Court recommends remand on this basis. See Trevizo, 871 F.3d at 674 ("We set aside a denial of Social Security benefits only when the ALJ decision is based on legal error or not supported by substantial evidence in the record." (internal quotation marks and citation omitted)); Brown-Hunter, 806 F.3d at 495 (finding the ALJ's failure to identify which testimony she found not credible and explain which evidence contradicted that testimony prevented the appellate court from determining whether the ALJ's conclusions were supported by substantial evidence); Lingenfelter, 504 F.3d at 1035 ("Lingenfelter argues that substantial evidence does not support the ALJ's decision because the ALJ improperly rejected his testimony as to the severity of his pain and symptoms. We agree.").

Even if the ALJ had adequately specified the testimony he found not believable, the ALJ's proffered reasons fail to meet the clear and convincing standard, for the reasons set forth below.

## C. **Activities of Daily Living**

The ALJ found Plaintiff's testimony "concerning the intensity, persistence, and limiting effects" of his symptoms not fully credible, in part, because "some of [Plaintiff's] reported activities since the alleged onset date are inconsistent with his alleged disabling functional limitations." AR at 29-30. The ALJ noted that Plaintiff reported "numerous activities of daily living," such as "performing self-care and household chores independently, preparing meals, shopping, and driving." Id. at 30 (citing Testimony and exhibit 8E). The ALJ also noted Plaintiff's activities discussed in "Finding 3" of the ALJ's decision, which included laundry, dishes, cleaning the bathroom, using a computer, fishing, camping, and gardening. Id. at 30, 28 (citing exhibits 7F and 8E). The ALJ noted that "[t]hese activities involve similar exertional levels and skills required of some jobs, which suggests the claimant was capable of some work." Id.

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." Molina v. Astrue, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (internal quotation marks and citations omitted). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id.

Here, the ALJ misrepresents some of Plaintiff's reported activities in that the record consistently notes that Plaintiff's activities are done at a minimal level and with difficulty and pain. Exhibit 8E is a function report that Plaintiff completed on November 29, 2013, soon after the alleged onset date of his disability. Id. at 286-94. In it, Plaintiff did state that he does daily household chores, laundry, and dishes, but he also states that basic work with his hands causes his wrists and finger joints to swell and hurt; that he has a hard time doing anything that requires pushing, pulling, lifting, turning, cleaning; that he cannot do any household chores without pain; that if he does not do house or yard work it is because he has joint pain and gets muscle injuries from it.[11] Id. at 286-89. Plaintiff also stated that he prepares his own meals of sandwiches, frozen dinners, pizza, and soups, but that he cannot use frying pans, pots or trays. Id. at 288. Plaintiff stated that he drives, but that his hands and feet joints hurt while driving, and that he shops once a week for about twenty to thirty minutes. Id. at 289. Exhibit 7F is a psychiatric evaluation dated December 10, 2013 in which Plaintiff's level of functioning at the time included taking care of his personal hygiene, ability to drive, and hobbies of fishing, camping, and gardening. Id. at 545-46. However, it also stated that Plaintiff reported "numerous medical problems affecting multiple body parts causing chronic pain." Id. at 545. At the July 23, 2015 hearing, Plaintiff testified that he lives with his parents; he does not perform household chores;

---

[11] It is unclear if Plaintiff claimed that he cleaned the bathroom, or was simply noting that he visited the bathroom in answering a question on the form asking him to describe what he did from the time he woke up until going to bed. AR at 287. He wrote, "I do stretches in the morning and I do daily chores around house, laundry, dishes, bathroom." Id.

he prepares food that he can toast or microwave; he lies down for about ten hours of the day; he drives a little bit when his dad cannot take him to get his prescriptions; and he can no longer fish in a boat like he used to because of the pain in his hands and dizziness. Id. at 55-57.

The fact that Plaintiff can perform these limited activities with difficulty and pain does not constitute a clear and convincing reason for negating any specific statement made by Plaintiff or Plaintiff's general claim that he is unable to work. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Additionally, Plaintiff's testimony in July 2015 that he is no longer able to perform household chores and go fishing further undermines the ALJ's conclusion that Plaintiff's daily living activities undercut his claim to disabling limitations and pain. Plaintiff's limited activities, done with pain initially and subsequently discontinued, accompanied by hours of lying down, is consistent with the pain and other symptoms that Plaintiff described in his testimony and does not support the ALJ's conclusion. Nor are these activities per se evidence of a capability of performing sustained work. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)). Therefore, the supposed inconsistency between Plaintiff's testimony and his activities of daily living does not satisfy the requirement of a clear and convincing reason to find Plaintiff's claims of pain and limiting symptoms unbelievable. See Garrison, 759 F.3d at 1016 (finding daily activities performed with assistance and accompanied by long rests as consistent with the plaintiff's pain-related testimony, and not a clear and convincing reason to discredit the testimony).

**D. Conservative Treatment**

The ALJ also found Plaintiff's testimony "concerning the intensity, persistence, and limiting effects" of his symptoms not fully credible, in part, because Plaintiff received routine and

conservative treatment since the alleged onset date.  AR at 29-30.  In support, the ALJ stated that Plaintiff's work-related left hand and wrist injury in 2013 was treated conservatively with pain medication and physical therapy.  Id. at 30.  The ALJ also noted that neurologist Dr. Soumekh examined Plaintiff and noted on March 5, 2015 that an MRI revealed cervical stenosis due to cervical herniated disc, and that Dr. Soumekh "merely recommended a routine, conservative treatment with cervical epidural blocks."  Id. at 30.  Finally, the ALJ stated that Plaintiff "reported throughout the record that treatment with transcutaneous electrical nerve stimulation (TENS) unit, pain medication, physical therapy, and hot/cold therapy wrap all helped his pain symptoms."  Id. at 30-31.

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) (citation omitted) (finding that treatment with over-the-counter pain medication was conservative treatment).  Claims of a lack of improvement may be rejected by pointing to clear and convincing evidence that directly undermines it, such as evidence that a claimant's symptoms improved with the use of medication.  See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, however, the evidence does not support either a showing that Plaintiff only received conservative treatment, nor that his symptoms improved from treatment to the extent that it undermined his testimony about pain or other symptoms.  First, although Plaintiff's initial work-related sprain to his left hand and wrist was treated conservatively and healed, the record shows that during the treatment, Plaintiff continued to have pain in his joints that increased and was felt in several areas, such as his shoulder, right ankle, feet, and knees.  AR at 345, 414, 420, 527-28.  The record shows that his pain medications increased in strength from naproxen to treat his initial wrist and hand sprain [id. at 509], to a variety of other prescription medications

/ / /

/ / /

/ / /

/ / /

17

to treat his severe pain, such as gabapentin[12] [id. at 543, 650], cyclobenzaprine[13] [id. at 544], tramadol[14] [id. at 543, 686], methotrexate[15] [id. at 646], Enbrel[16] [id. at 649, 666], Prednisone[17] [id. at 655], and Tylenol with codeine [id. at 60]. Additionally, Dr. Park, Plaintiff's primary treating doctor, first referred him to a rheumatology specialist on December 24, 2013 [id. at 556], but Plaintiff could not see a rheumatologist until May 19, 2014 because of insurance coverage issues.[18] Id. at 561, 626. Dr. Park also referred Plaintiff to Dr. Rosa Navarro for interventional pain management and was first seen by her on May 7, 2014. Id. at 685-88. Dr.

_____

[12] "Gabapentin works in the brain to prevent seizures and relieve pain for certain conditions in the nervous system. It is not used for routine pain caused by minor injuries or arthritis. Gabapentin is an anticonvulsant." MayoClinic.org, https://www.mayoclinic.org/drugs-supplements/gabapentin-oral-route/description/drg-20064011 (last visited May 18, 2018).

[13] "Cyclobenzaprine is used with rest, physical therapy, and other measures to relax muscles and relieve pain and discomfort caused by strains, sprains, and other muscle injuries. Cyclobenzaprine is in a class of medications called skeletal muscle relaxants." MedlinePlus.gov, https://medlineplus.gov/druginfo/meds/a682514.html (last visited May 18, 2018).

[14] "Tramadol is used to relieve moderate to moderately severe pain. Tramadol extended-release tablets and capsules are only used by people who are expected to need medication to relieve pain around-the-clock. Tramadol is in a class of medications called opiate (narcotic) analgesics." MedlinePlus.gov, https://medlineplus.gov/druginfo/meds/a695011.html (last visited May 18, 2018).

[15] Methotrexate is used to treat severe psoriasis that cannot be controlled by other treatments, severe active rheumatoid arthritis, and certain types of cancer. See MedlinePlus.gov, https://medlineplus.gov/druginfo/meds/a682019.html (last visited May 18, 2018). "Methotrexate is in a class of medications called antimetabolites." Id.

[16] Enbrel is indicated for reducing signs and symptoms of psoriatic arthritis, rheumatoid arthritis, polyarticular juvenile idiopathic arthritis, ankylosing spondylitis, and plaque psoriasis. RxList.com, https://www.rxlist.com/enbrel-drug.htm#indications_dosage (last visited May 18, 2018).

[17] Prednisone is a corticosteroid that may be prescribed to treat, inter alia, "certain types of arthritis; severe allergic reactions; multiple sclerosis (a disease in which the nerves do not function properly); lupus (a disease in which the body attacks many of its own organs); and certain conditions that affect the lungs, skin, eyes, kidneys blood, thyroid, stomach, and intestines." MedlinePlus.gov, https://medlineplus.gov/druginfo/meds/a601102.html (last visited May 18, 2018).

[18] Although the record states that Plaintiff's medical records at Family Health Centers of San Diego include a letter from "UCSD Rheum" on December 18, 2013 that listed "fibromyalgia, uncomplicated OA, arthralgia with a positive RF, and serologies positive for ANA, but no other signs of SLE as the [patient's] primary issues," the notation indicates this was an error because Plaintiff was not seen by them. AR at 561.

Navarro treated Plaintiff with cervical injections of nerve block, and cervical epidural steroid injections in 2015. Id. at 695, 697, 699, 702, 703, 718. Therefore, the increased pain prescriptions, the referrals to a rheumatologist and pain specialist, and the spinal injections of nerve block and epidural steroids are evidence that Plaintiff's treatment was far from conservative. See Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."); Hydat Yang v. Colvin, No. CV 14-2138-PLA, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015) (collecting cases that find spinal epidural injections are not "conservative" treatment).

Furthermore, the evidence shows that although Plaintiff noted that electrical nerve stimulation with the TENS unit, pain medication, physical therapy, and hot/cold therapy wrap helped his pain symptoms at various times, Plaintiff continually complained of severe pain and pain in his joints. See AR at 542, 556, 558, 626, 649, 685. Notably, at Plaintiff's first visit to Dr. Navarro, the pain specialist, on May 7, 2014, the notes state that Plaintiff "has been treated with conventional therapy including medication, exercises, massage and physical therapy, TENS unit, WITHOUT HELP" and describes the pain as constant, aggravated by physical activity, relieved by nothing, and affecting the neck, face, shoulders, upper extremities, hips, knees, feet, low back, and hands. Id. at 685 (emphasis in original). The record also shows that spinal blocks only partially relieved Plaintiff's pain for a few days. Id. at 697, 699, 702. Because the evidence does not support the ALJ's determination that "[TENS] unit, pain medication, physical therapy, and hot/cold therapy wrap" adequately controlled Plaintiff's symptoms, this was not a clear and convincing reason to discredit Plaintiff's credibility. See id. at 30-31; Lester v. Chater, 81 F.3d 821, 833 (9th Cir. 1995), as amended (Apr. 9, 1996) ("Occasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability."); Machunis v. Colvin, No. ED CV 15-1349-SP, 2016 WL 5661865, at *4 (C.D. Cal. Sept. 29, 2016) (finding that the ALJ's determination that the claimant's treatments and medications were generally successful in controlling claimant's symptoms was not supported by the record and thus was not a clear and convincing reason to discount his credibility).

/ / /

### E. **Testimony Contradicting Medical Record**

The Commissioner argues that the ALJ noted two instances of evidence in the record that contradicted Plaintiff's testimony: (1) Plaintiff's statement in the Asthma Questionnaire that he had asthma attacks two to three times per month, which was "contrasted with the medical record that did not support this alleged frequency;" and (2) Plaintiff's complaints to orthopedic surgeon Dr. Thomas Sabourin of "total body pain" that was not supported by Dr. Sabourin's examination. Def.'s Mot. at 6 (citing AR at 31).

By the Commissioner's own description and the ALJ's characterization of his determinations, these statements are not truly presented as contradicting testimony, but are instead allegations that there is a lack of objective medical evidence to support the claimed level of impairment. Regarding the asthma, the ALJ states that the record shows "claimant was treated with a daily inhaler and bronchodilator as needed" and that during an emergency room visit for back pain on July 7, 2015, Plaintiff denied having shortness of breath and had a negative chest x-ray. Id. at 31. Neither of those indications in the record necessarily contradict Plaintiff's statement that he has asthma attacks two to three times per month, and thus does not present a clear and convincing reason to discount Plaintiff's statements on the Asthma Questionnaire. Regarding Plaintiff's complaint of "total body pain," Dr. Sabourin did not state that Plaintiff was malingering, but only that during his one and only examination of Plaintiff on June 30, 2014, he could find no orthopedic restrictions and limitations and that Plaintiff presents with "[g]eneralized pain syndrome, etiology undetermined." Id. at 548-52. Furthermore, the ALJ gave "less weight" to Dr. Sabourin's opinion concluding that Plaintiff had no limitations "because the record shows the claimant is more limited than determined by [him]." Id. at 32. Therefore, Plaintiff's complaint of total body pain to Dr. Sabourin was not contradicted by Dr. Sabourin and does not present a clear and convincing reason to disbelieve his complaint of pain. To the extent that Plaintiff's statement regarding the frequency of his asthma attacks and his complaint of pain should be found unbelievable because they are not supported by objective medical evidence, this argument also fails. See Trevizo, 871 F.3d at 679 ("[A]n ALJ may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical

17cv497-JLS (BLM)

evidence." (internal quotation marks and citation omitted)).

## F. **Lack of Objective Medical Evidence to Support Level of Impairment**

The Commissioner argues that the ALJ properly "noted a lack of objective evidence to support the level of impairment [Plaintiff] alleged." Def.'s Mot. at 7 (citing AR at 30-33).

Whether a claimant's alleged symptoms are consistent with the medical evidence is one of several factors that an ALJ must consider in assessing credibility. Lingenfelter, 504 F.3d at 1040 (referencing Social Security Ruling 96-7p that requires "ALJs to consider all of the evidence in the case record in assessing a claimant's subjective pain and symptom testimony, including: the individual's daily activities; the location, duration, frequency, and intensity of the pain or symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medications; any other treatment or measures used for relief; functional restrictions; and any other relevant factors" (internal quotation marks and citation omitted)). However, the Ninth Circuit instructs that a plaintiff's testimony about symptoms may not be discredited "solely because it is not substantiated by objective medical evidence." Trevizo, 871 F.3d at 679.

Here, the ALJ stated his RFC determination for Plaintiff, claimed that "the objective and clinical medical evidence of record does not support the claimant's allegations of disabling limitations to the extent alleged," and then he essentially recited the medical evidence that support his RFC finding. See AR at 29-33. The ALJ's focus on the connection between the medical evidence and the RFC, instead of Plaintiff's testimony, failed to provide specific, clear, and convincing reasons for disbelieving specific statements from Plaintiff's testimony. See Brown-Hunter, 806 F.3d at 489 ("We hold that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination.")

Additionally, the ALJ failed to even provide an adequate basis for considering the objective evidence of record because he erred by ignoring some medical opinions entirely, and not providing the proper weight to other opinions. The ALJ did not mention in the RFC determination and related credibility analysis the medical records of two of Plaintiff's treating specialists, pain

17cv497-JLS (BLM)

specialist Dr. Navarro and rheumatologist Dr. Tania Rivera. See AR at 29-33. The record contains notes from seven of Plaintiff's appointments with Dr. Navarro [id. at 685-88, 689-91, 692-94, 695-96, 697-98, 699-701, 702-04] and five of Plaintiff's appointments with Dr. Rivera [id. at 577-79, 626-28, 634-36, 654-56, 663-65]. As a result, Dr. Rivera's diagnosis and treatment of Plaintiff's psoriasis with arthopathy or arthritis in June 2014 was largely ignored by the ALJ.[19] See e.g., id. at 634, 646. Dr. Navarro's diagnoses and treatments of Plaintiff's cervical spondylosis without myelopathy and chronic pain syndrome were also ignored. See e.g., id. at 685-88. The ALJ also ignored the medical records of Dr. Jose Lira who treated Plaintiff's sleep apnea [id. at 710-16], and the RFC questionnaire completed by physical therapist Eugielyn Montero on January 6, 2016 [id. at 723-25]. The ALJ erred by ignoring these medical opinions and essentially assigning them little weight.[20] Garrison, 759 F.3d at 1012–13 (9th Cir. 2014) ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

The opinion of a treating doctor generally should be given more weight than opinions of doctors who do not treat the claimant. See Turner v. Comm'r. of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)). If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. Id. (citing Lester, 81 F.3d at 830-31). Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and

---

[19] Psoriasis arthritis or arthropathy is "an arthritis associated with psoriasis that causes joint pain, stiffness, and swelling." Trevizo, 871 F.3d at 674.
[20] The Code of Federal Regulations define a medical opinion for purposes of Social Security determinations as follows: "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527.

17cv497-JLS (BLM)

legitimate reasons" supported by substantial evidence in the record for doing so.  Id. (citing Lester, 81 F.3d at 830-31).  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).  "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record."  Townsend v. Colvin, 2013 WL 4501476, *6 (C.D. Cal. Aug. 22, 2013) (quoting Lester, 81 F.3d at 830–31; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999)).  If a treating doctor's opinion is not afforded controlling weight,

> [t]he ALJ must consider the "length and the treatment relationship and the frequency of examination" as well as the "nature and extent of the treatment relationship." . . . In addition, the ALJ must still consider the other relevant factors such as "the amount of relevant evidence that supports the opinion and the quality of explanation provided" and "the consistency of the medical opinion with the record as a whole."

West v. Colvin, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quoting Orn, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c), 404.1527(c)).

Here, the ALJ erred by giving great weight to non-examining doctor Gerald Weingarten and little weight to the April 23, 2014 opinion of primary treating doctor Taikeun Park.  First, the ALJ gave great weight to only Dr. Weingarten's opinion because "he was the only physician to review all the evidence and is well versed in Social Security disability law."  AR at 31; see also supra II.  However, Dr. Weingarten never examined nor treated Plaintiff.  See id.  The ALJ also erred by giving little weight to the Impairment Questionnaire that Dr. Park completed in April 2014, in which he determined that Plaintiff could only "lift and carry five pounds; sit, stand and walk less than one hour per eight hour day; could never grasp, turn, twist, perform fine

manipulations, or reach overhead;" required unscheduled breaks every thirty minutes, and would miss more than three workdays per month due to his impairments." Id. at 32; 572-76. The ALJ claimed that the "extreme limitations" were unsupported by any clinical or diagnostic findings of record, and inconsistent with the "unremarkable lumbar spine" and "slight reversal of cervical lordosis" diagnostic findings Dr. Park listed as support for his assessment of Plaintiff. Id. at 32; 572. Dr. Park was Plaintiff's primary treating doctor and as such, his opinion should generally have been given more weight than a non-treating doctor such as Dr. Weingarten. See Turner v. Comm'r of Soc. Sec., 613 F. 3d at 1222. The ALJ also improperly dismissed Dr. Park's Impairment Questionnaire for lacking support by clinical or diagnostic findings of record because although it was a check-the-box form, it was supported by two years of experience treating Plaintiff, which merits weight. See id. at 572; Garrison, 759 F.3d at 1013 (finding the ALJ erred by failing "to recognize that the opinions expressed in check-box form in the February 2008 PFC Questionnaire were based on significant experience with [claimant] and supported by numerous records, and were therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit"). Dr. Park's Impairment Questionnaire was contradicted by Dr. Weingarten, Dr. Soumekh, and physical therapist Eugielyn Montero who all found Plaintiff to be less impaired than Dr. Park did. See id. at 572-76; 31; 705-07. Accordingly, the ALJ erred by failing to provide specific and legitimate reasons supported by substantial evidence in the record for giving controlling weight to Dr. Weingarten's opinion and little weight to Dr. Park. See Turner, 613 F. 3d at 1222.

The Court concludes that none of the additional reasons provided by the ALJ constitute a clear and convincing basis for finding Plaintiff less than fully credible. Accordingly, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment on this issue be **GRANTED**, and Defendant's Cross-Motion for Summary Judgment on this issue be **DENIED**.

### G. **Remand Versus Award Benefits**

"The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court." Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if

17cv497-JLS (BLM)

enhancement of the record would be useful." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits." <u>Id.</u> However, a remand for an immediate award of benefits is appropriate only in rare circumstances. <u>Brown-Hunter</u>, 806 F3d. at 495.

In this case, the ALJ erred by (1) failing to identify the precise statements made by Plaintiff that were not credible; (2) failing to provide adequate justification for finding Plaintiff not fully credible; (3) assigning less (or no) weight to the opinions of Plaintiff's treating physician Dr. Park, treating specialists Dr. Navarro and Dr. Rivera, treating physician Jose Lira, post-hearing examining physical therapist Eugielyn Montero; and (4) assigning controlling weight to non-treating physician Dr. Weingarten. Given the number and types of errors, the Court finds it would be useful to enhance the administrative record.[21] This Court therefore **RECOMMENDS REVERSING** the decision of the ALJ and **REMANDING** for further consideration to address the errors noted above.

## VI. **CONCLUSION**

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **June 6, 2018**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **June 20, 2018**. The parties are advised that failure to

---

[21] For example, further administrative proceedings regarding credibility would serve a purpose because "a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony." <u>Brown-Hunter</u>, 806 F.3d at 495 (quoting <u>Treichler</u>, 775 F.3d at 1106).

file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  5/23/2018

Hon. Barbara L. Major
United States Magistrate Judge

17cv497-JLS (BLM)